# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

DOCUFREEDOM INC.,

       Plaintiff,

v.

                                     Case No. 17-2706-DDC-TJJ

UNITED STATES DEPARTMENT
OF JUSTICE and KAREN
MCFADDEN,

       Defendants.

## MEMORANDUM AND ORDER

Plaintiff DocuFreedom filed this lawsuit after defendant United States Department of Justice ("DOJ") failed to respond to its Freedom of Information Act ("FOIA") requests within the statutory time limit. Doc. 9 (Am. Compl.). In total, DocuFreedom requested that DOJ produce 119 items from the DOJ Library and a series of emails from defendant Karen McFadden, who coordinated DOJ's response to DocuFreedom's FOIA requests. DOJ since has produced 112 items in full and Ms. McFadden's emails in part. And now, only a handful of items remain in dispute: 17 DOJ Library items and certain redactions to Ms. McFadden's emails.[1]

DOJ has moved for summary judgment, arguing its withholdings are proper under several FOIA exemptions. Doc. 19. DocuFreedom challenges some, but not all, of DOJ's withholdings. Doc. 22. And DOJ has filed a Reply. Doc. 23.

---

[1] The court refers to the documents requested by DocuFreedom from DOJ Library as "items" and information requested from Ms. McFadden's emails as "redactions." When referring to a specific item or redaction, the court capitalizes each term—*e.g.*, "Item 4" or "Redaction 5."

Mindful of the delicate balance FOIA aims to achieve, the court reaches some conclusions but must defer others. First, the court grants summary judgment in DOJ's favor for certain items under the work product privilege contained in FOIA Exemption 5. But, the court denies summary judgment without prejudice on this record for the remaining items—the court directs DOJ to submit these items for in camera review and provide supplemental briefing. Second, the court grants summary judgment in DOJ's favor for the redactions to Ms. McFadden's emails, sustaining the deliberative process privilege invoked by DOJ and contained in FOIA Exemption 5. After discussing the facts governing this motion, the court explains its reasoning.

## I.    Background

### A.    Summary Judgment Facts

The Justice Management Division ("JMD") is a division of the United States Department of Justice. And within JMD is the Library Staff. The JMD Library Staff manages DOJ's Main Library and six other DOJ libraries ("JMD-controlled libraries"). JMD-controlled libraries maintain collections and other legal and general resources that DOJ employees use for their research needs.

The JMD Library Staff also maintains the DOJ Libraries Online Catalog ("Catalog"). The Catalog lists materials, but the list is not limited to materials in the possession of the JMD-controlled libraries or otherwise held by JMD. For example, the Catalog includes materials held by libraries managed by other DOJ components. So, many materials in the Catalog only are accessible to employees of those other components.

Over the course of 11 months, DocuFreedom made several FOIA requests to JMD. On February 7, 2017, JMD received a FOIA request from DocuFreedom. DocuFreedom requested a copy of the Catalog.

On July 21, 2017, DocuFreedom requested the Catalog again, but in spreadsheet form. DocuFreedom also requested 37 items listed in the Catalog.

On November 9, 2017, JMD received more FOIA requests from DocuFreedom. Namely, DocuFreedom asked JMD to produce 63 more items identified in the Catalog.

On December 17, 2017, JMD received another series of FOIA requests from DocuFreedom. DocuFreedom requested emails to and from JMD employee Karen McFadden about DocuFreedom's FOIA requests. And, on January 3, 2018, DocuFreedom requested 19 more items listed in the Catalog.

JMD acknowledged DocuFreedom's January 3, 2018, FOIA request in a timely fashion. But DocuFreedom failed to acknowledge the requests made on July 21 and November 9, 2017.

On May 16, 2018, JMD began sending DocuFreedom materials in response to its FOIA requests. JMD sent DocuFreedom a searchable PDF of the Catalog (current as of May 19, 2017) and an Excel spreadsheet version of the Catalog (current as of January 11, 2018). Also, when possible, JMD's responses directed DocuFreedom to all publicly available material responsive to the FOIA requests.

JMD produced some materials responsive to DocuFreedom's FOIA requests, but it withheld others based on exemptions or other statutory grounds. JMD tracked its response for each requested item on a production table. JMD gave DocuFreedom a copy of the production table, which outlined the production status for all 119 items requested from the Catalog.

JMD produced all of Karen McFadden's responsive emails about DocuFreedom's FOIA requests. But JMD redacted portions of these emails based on FOIA Exemptions (b)(5) and (b)(6). JMD also withheld Items 2–13, 37, 39, 49–50, and 90. JMD asserted that it was withholding these items under Exemption (b)(5) of FOIA. And JMD withheld Item 10 under Exemption (b)(6). Last, JMD did not produce Items 19, 56, 86–87, and 97 because they were not in JMD's possession.

### B.    Procedural History

On December 13, 2017, DocuFreedom filed a Complaint in our court. Doc. 1. The Complaint asserts that defendants—by failing to respond to DocuFreedom's FOIA requests from July 21 and November 9, 2017—had violated FOIA, the Administrative Procedures Act ("APA"), and the Open Government Act of 2007. In March 2018, DocuFreedom filed an Amended Complaint (Doc. 9). It incorporates DocuFreedom's January 3, 2017, Catalog requests and its request for Ms. McFadden's emails.

Defendants then moved to stay the case for 45 days. Doc. 10. The court granted the stay to allow defendants either to produce the requested materials or to identify applicable exemptions. Doc. 11. The court continued the stay as the parties worked to resolve the FOIA requests. Doc. 13. Ultimately, DOJ produced 102 of the 119 items in full and Ms. McFadden's emails with redactions. DOJ then moved for summary judgment (Doc. 19), asserting the remaining items and the redactions to Ms. McFadden's emails properly were withheld under several FOIA exemptions.

## II.    Legal Standards

### A.    FOIA

FOIA was enacted "to pierce the veil of administrative secrecy and to open agency action to the light of public scrutiny." *Dep't of Air Force v. Rose*, 425 U.S. 352, 361 (1976). "FOIA provides the public 'a right of access, enforceable in court, to federal agency records, subject to nine specific exemptions.'" *Hull v. I.R.S.*, 656 F.3d 1174, 1177 (10th Cir. 2011) (quoting *Anderson v. Dep't of Health & Human Servs.*, 907 F.2d 936, 941 (10th Cir. 1990)); *Trentadue v. Integrity Comm.*, 501 F.3d 1215, 1225–26 (10th Cir. 2007) ("Notwithstanding FOIA's aspiration of governmental transparency, Congress recognized that disclosure of certain classes of documents could harm legitimate government interests."). Of the nine exemptions to FOIA, two matter in this case:

> (5) inter-agency or intra-agency memorandums or letters which would not be available by law to a party other than an agency in litigation with the agency;
>
> (6) personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy[.]

5 U.S.C. § 552(b).

Several principles guide the court's analysis in FOIA cases. First, the court must broadly construe FOIA in favor of disclosure. *Integrity Comm.*, 501 F.3d at 1226 (citation omitted). Second, the court must apply FOIA's exemptions narrowly. *Id.* (citation omitted). Third, FOIA directs government agencies to provide "[a]ny reasonably, segregable portion of a record . . . to any person requesting such record after deletion of the portions which are exempt." *Id.* (quoting 5 U.S.C. § 552(b)).

**B.      Summary Judgment**

"FOIA cases typically and appropriately are decided on motions for summary judgment."

*Stein v. U.S. Dep't of Justice*, 134 F. Supp. 3d 457, 468 (D.D.C. 2015) (quoting *Citizens for*

*Responsibility & Ethics in Wash. v. U.S. Dep't of Justice*, 602 F. Supp. 2d 121, 123 (D.D.C.

2009)).  The district court reviews de novo the government's decision to withhold documents

under any of FOIA's statutory exemptions.  *Id.* (citation omitted).  And, the government bears

the burden to prove that the requested information falls within one of FOIA's nine exemptions.

*Hull*, 656 F.3d at 1177 (citing 5 U.S.C. § 552(a)(4)(B)); *Shapiro v. U.S. Dep't of Justice*, 969 F.

Supp. 2d 18, 26 (D.D.C. 2013) ("Once [a FOIA] action is filed, the agency generally has the

burden of demonstrating that its response to the plaintiff's FOIA request was appropriate.")

(citation omitted).

Generally, a government agency submits affidavits to satisfy its burden of proof.  *Hull*,

656 F.3d at 1177.  Specifically,

> [A]ffidavits must show, with reasonable specificity, why the
> documents fall within the exemption.  The affidavits will not suffice
> if the agency's claims are conclusory, merely reciting statutory
> standards, or if they are too vague or sweeping.  If the affidavits
> provide specific information sufficient to place the documents
> within the exemption category, if the information is not contradicted
> in the record, and if there is no evidence in the record of agency bad
> faith, then summary judgment is appropriate without *in camera*
> review of the documents.

*Id.* at 1177–78 (quoting *Quiñon v. FBI*, 86 F.3d 1222, 1227 (D.C. Cir. 1996)).  "Ultimately, an

agency's justification for invoking a FOIA exemption is sufficient if it appears 'logical' or

'plausible.'"  *Stein*, 134 F. Supp. 3d at 468–69 (quoting *ACLU v. U.S. Dep't of Def.*, 628 F.3d

612, 619 (D.C. Cir. 2011)).  If the government's affidavits or declarations leave more to be

desired, the court—in its discretion—may order the agency to produce a *Vaughn* index[2] or to submit the requested information for *in camera* review. *Hull*, 656 F.3d at 1178 (citing *Quiñon*, 86 F.3d at 1227) (further citation omitted); *see also N.Y. Times Co. v. U.S. Dep't of Justice*, 758 F.3d 436, 438 (2d Cir. 2014) ("The *Vaughn* index procedure was developed to avoid the cumbersome alternative of routinely having a district court examine numerous multi-page documents *in camera* to make exemption rulings."), *supplemented*, 762 F.3d 233 (2d Cir. 2014). In this case, DOJ has attached both declarations and a *Vaughn* index to its Memorandum in Support of Motion for Summary Judgment. Docs. 20-1 (Feldt Decl.), 20-2 (Allen Decl.), 20-3 (*Vaughn* Index).[3]

## III.     Discussion

DocuFreedom's Amended Complaint makes three claims. DocuFreedom asserts that DOJ violated FOIA by failing to respond within the statutory timeframe (Count I); that DOJ acted arbitrarily and capriciously in denying its requests under the APA (Count II); and that DOJ violated the Open Government Act of 2007 by failing to acknowledge receipt of DocuFreedom's FOIA requests (Count III). Doc. 9 at 20–21 (Am. Compl. ¶¶ 56–68). As explained, each count falls under FOIA, and, at this stage, it is premature for the court to address Counts II and III.

Count II alleges a violation of the APA for DOJ's "arbitrary and capricious conduct" in withholding the requested items. Courts uniformly have "declined jurisdiction over APA claims that sought remedies made available by FOIA." *Feinman v. F.B.I.*, 713 F. Supp. 2d 70, 76 (D.D.C. 2010) (collecting cases). And here, FOIA provides the relief DocuFreedom seeks.

---

[2]     A *Vaughn* index looks like a privilege log commonly used in civil litigation. And it functions in much the same fashion. It lists each withheld (or partially withheld) document and explains why the agency withheld the information. *Kansas ex rel. Schmidt v. U.S. Dep't of Def.*, 320 F. Supp. 3d 1227, 1238 n.2 (D. Kan. 2018) (citing *Hull*, 656 F.3d at 1178 n.2).

[3]     In its Reply, DOJ also has included a supplemental declaration of Mr. Feldt. Doc. 23-1 (Supp. Feldt Decl.).

Specifically, DocuFreedom asserts that the court can make a factual finding "whether the agency personnel acted arbitrarily or capriciously with respect to the withholding." Doc. 22 at 15. This kind of finding is predicated on the court ordering "the production of any agency records improperly withheld from the complainant" and assessing attorneys' fees and other litigation costs against the United States. 5 U.S.C. § 552(a)(4)(F)(i). This Order does not direct DOJ to produce any agency records improperly held from the complainant, nor does it assess attorneys' fees and other litigation costs against DOJ. It is thus premature to consider whether DOJ's conduct was arbitrary or capricious.

Count III alleges a violation of the Open Government Act of 2007. Doc. 9 at 21 (Am. Compl. ¶¶ 65–68). The Act modified FOIA, most notably by changing the requirements for a FOIA plaintiff to qualify for an award of attorneys' fees. *Brayton v. Office of the U.S. Trade Representative*, 641 F.3d 521, 525 (D.C. Cir. 2011) ("[P]laintiffs can now qualify as 'substantially prevail[ing],' and thus become eligible for attorney fees, without winning court-ordered relief on the merits of their FOIA claims."). This Order does not decide the question whether DocuFreedom has substantially prevailed in this action because it is premature. Instead, as explained below, the court directs DOJ to submit additional briefing and several disputed items for *in camera* review. Because the court does not decide in this Order whether DocuFreedom substantially prevailed, the court cannot award attorneys' fees under FOIA.

Count I ("Violation of FOIA") is moot for the records released in full and the portions of the records released in part.[4] *Am. Immigration Council v. U.S. Dep't of Homeland Sec.*, 905 F.

---

[4]     DocuFreedom's Amended Complaint also asks the court to find that DOJ exceeded the legal response time and, if it needed an extension, DOJ failed to give written notice of that need. Doc. 9 at 21 (Am. Compl. ¶ 69(A)). The court interprets this request to seek declaratory relief. FOIA does not provide such a remedy in this context. *Hunton & Williams LLP v. U.S. Envtl. Prot. Agency*, 248 F. Supp. 3d 220, 259 (D.D.C. 2017) ("'FOIA does not create a cause of action for an agency's untimely response to a FOIA request' beyond the ability to seek an injunction from the district court." (quoting *Bangoura v. U.S. Dep't of Army*, 607 F. Supp. 2d 134, 143 (D.D.C. 2009))).

Supp. 2d 206, 213 (D.D.C. 2012). So, the question that now is ripe for decision is whether DOJ

properly invoked certain FOIA exemptions. The court divides its analysis of this question into

two parts. First, the court decides whether the items requested by DocuFreedom from the

Catalog and withheld by DOJ were exempted properly from disclosure. Second, the court turns

to Ms. McFadden's email to determine whether DOJ's redactions were proper under FOIA.[5]

### A.  Items Requested from the Catalog[6]

DocuFreedom makes two arguments for release of the disputed records. First,

DocuFreedom asserts that all the items are publicly available under DOJ Library policy. Second,

if not public, DocuFreedom contends that DOJ has not established that certain items are exempt

under FOIA.

### 1.  The Items requested from the Catalog are not publicly available.

DocuFreedom's Response to the summary judgment motion argues something it never

asserted in its Amended Complaint. It contends that none of the disputed records are exempt

because they are publicly available. *Compare* Doc. 22 at 9, *with* Doc. 9 at 4 (Am. Compl. ¶ 14)

("While the DOJ library is not available to the public, many of the documents in its holdings are

subject to release under FOIA."). DocuFreedom contends that the disputed records are located in

the DOJ's library. And, the library is open to the public "by appointment for access to specific

---

[5]     Ms. McFadden, as an individual officer, is not a proper party defendant in this FOIA action. A court may "enjoin the agency from withholding agency records and [ ] order the production of any agency records improperly withheld from the complainant." 5 U.S.C. § 552(a)(4)(B). Thus, DOJ—but not Ms. McFadden—is the proper defendant. *Barvick v. Cisneros*, 941 F. Supp. 1015, 1017 n.2 (D. Kan. 1996); *see also Batton v. Evers*, 598 F.3d 169, 173 n.1 (5th Cir. 2010) ("A FOIA plaintiff may not assert a claim against an individual federal official; the proper defendant is the agency."); *Martinez v. Bureau of Prisons*, 444 F.3d 620, 624 (D.C. Cir. 2006) (affirming dismissal of individual defendants because no cause of action existed under FOIA that would entitle plaintiff to relief against them). The court thus dismisses Ms. McFadden as a defendant.

[6]     Items 19, 56, 86–87, and 97 are no longer in dispute. Doc. 22 at 14.

government depository items or those titles which are unique to our Libraries and cannot be located elsewhere." Doc. 22 at 9 (quoting U.S. Dep't of Justice, *Library Staff*, www.justice.gov/jmd/ls (last updated Apr. 12, 2017)).

DOJ, in response, provides the supplemental declaration of Dennis G. Feldt, the Director of the JMD Library Staff. Doc. 23-1 at 3 (Supp. Feldt Decl.). He asserts that the DOJ Library is a Federal Depository Library under 44 U.S.C. § 1907. Under this program, the United States Government Publishing Office provides government publications—such as the Budget of the United States Government and the Code of Federal Regulations— to depository libraries. *Id.* (Supp. Fedlt Decl. ¶ 6). Mr. Feldt's declaration asserts that the documents at issue here are not available to the public because they are internally created materials. *Id.* (Supp. Feldt Decl. ¶¶ 8–9). And, the DOJ Library does not provide access to any internally created materials to the public (or other government agencies) without securing permission from the division or component who created the material. *Id.* (Supp. Feldt Decl. ¶ 8). Of course, DOJ Library documents remain subject to FOIA. *See id.* (Supp. Feldt Decl. ¶ 9).

DOJ has the better of this argument. While the requested documents are government documents, they are not government publications. Under the Federal Depository Library Program, "government publication" is defined to mean "informational matter which is published as an individual document at Government expense, or as required by law." 44 U.S.C. § 1901. So, while these items may be in the Catalog of JMD-controlled libraries, it does not follow that each library item has been published. Instead, as Mr. Feldt explains, the disputed documents are internally created materials. The proper avenue for disclosure here is FOIA, not the Federal Depository Library Program under 44 U.S.C. §§ 1901–16.

## 2. Items 2–3, 5, 7–9, 11–13, and 90 were withheld properly as attorney work product under Exemption 5.

DOJ contends that each of these withheld documents falls within a statutory exemption to disclosure. *See* 5 U.S.C. § 552(b). Namely, DOJ asserts, each document falls within Exemption 5, which applies to "inter-agency or intra-agency memorandums or letters that would not be available by law to a party other than an agency in litigation with the agency." *Id.* § 552(b)(5).

To qualify as exempt under (b)(5), the documents must satisfy two conditions: (1) its source must be a government agency; and (2) it must fall "within the ambit of a privilege against discovery under judicial standards that would govern litigation against the agency that holds it." *Raytheon Aircraft Co. v. U.S. Army Corps of Engineers*, 183 F. Supp. 2d 1280, 1287 (D. Kan. 2001) (quoting *Dep't of Interior v. Klamath Water Users Protective Ass'n*, 532 U.S. 1, 8 (2001)). DocuFreedom does not dispute that the documents at issue here come from government agency sources. So, the court next considers whether, under the second requirement, the documents are protected by the attorney work product privilege.

Exemption 5 protects material that would be "normally privileged in the civil discovery context." *NLRB v. Sears, Roebuck & Co.*, 421 U.S. 132, 149 (1975). DOJ contends that the documents would be privileged in civil discovery under the attorney work product privilege. The attorney work product privilege protects an attorney's mental processes and thoughts form disclosure. *Raytheon*, 183 F. Supp. 2d at 1287 (citing *Hickman v. Taylor*, 329 U.S. 495, 511 (1947)) (further citation omitted). To qualify as attorney work product, the materials must (1) be documents or tangible things; (2) prepared in anticipation of litigation or for trial; and (3) prepared by or for a party or a representative of that party. *Id.* (citing *Johnson v. Gmeinder*, 191 F.R.D. 638, 643 (D. Kan. 2000)).

"The attorney work product privilege 'should be interpreted broadly and held largely inviolate' as 'it is essential that a lawyer work with a certain degree of privacy, free from unnecessary intrusion by opposing parties and their counsel.'" *Stein*, 134 F. Supp. 3d at 477 (first quoting *Judicial Watch v. U.S. Dep't of Justice*, 432 F.3d 366, 369 (D.C. Cir. 2005); then quoting *Hickman*, 329 U.S. at 510). "Any part of [a document] prepared in anticipation of litigation, not just the portions concerning opinions, legal theories, and the like, is protected by the work product doctrine." *Stein*, 134 F. Supp. 3d at 477 (quoting *Tax Analysts v. IRS*, 117 F.3d 607, 620 (D.C. Cir. 1997)). But, in cases "involving voluminous or lengthy work product records . . . it [is] preferable for courts to make at least a preliminary assessment of the feasibility of segregating nonexempt material." *Nat'l Ass'n of Criminal Def. Lawyers v. Dep't of Justice Exec. Office for U.S. Attorneys*, 844 F.3d 246, 255 (D.C. Cir. 2016) (hereinafter *NACDL*).

Whether material was created "in anticipation of litigation" often proves critical when the government asserts the work product privilege. In FOIA cases, "the temporal relationship between the document at issue and the litigation for which the document was prepared is irrelevant." *Stein*, 134 F. Supp. 3d at 477 (quoting *Shapiro*, 969 F. Supp. 2d at 29). Instead, the court must assess whether "in light of the nature of the document and the factual situation in the particular case, the document can fairly be said to have been prepared or obtained because of the prospect of litigation." *NACDL*, 844 F.3d at 255. Without such a limitation, the work product privilege would operate as a rule-swallowing exception, which contradicts FOIA's preference for disclosure. *Coastal States Gas Corp. v. Dep't of Energy*, 617 F.2d 854, 865 (D.C. Cir. 1980) ("[I]f an agency were entitled to withhold any document prepared by any person in the Government with a law degree simply because litigation might someday occur, the policies of FOIA would be largely defeated.").

In the FOIA context, does the work product privilege require the material to be created in anticipation of a specific claim? Not necessarily. As the D.C. Circuit has explained, "Exemption 5 extends to documents prepared in anticipation of foreseeable litigation . . . even if no specific claim is contemplated." *NACDL*, 844 F.3d at 253 (quoting *Schiller v. NLRB*, 964 F.2d 1205, 1208 (D.C. Cir. 1992), *abrogated on other grounds by Milner v. U.S. Dep't of Navy*, 562 U.S. 562 (2011)); *Al-Turki v. Dep't of Justice*, 175 F. Supp. 3d 1153, 1176 (D. Colo. 2016). The work product privilege requires no specific claim when lawyers act "not as prosecutors or investigators of suspected wrongdoers, but as legal advisors protecting their agency clients from the possibility of future litigation[.]" *NACDL*, 844 F.3d at 254 (quoting *In re Sealed Case*, 146 F.3d 881, 885–86 (D.C. Cir. 1998)); *Shapiro*, 969 F. Supp. 2d at 30 ("[I]f the lawyer is 'render[ing] legal advice in order to protect the client from future litigation about a particular transaction,' no specific claim need have arisen." (quoting *Sealed Case*, 146 F.3d at 885)). In contrast, anticipating a specific claim is required where "the documents at issue [have] been prepared by government lawyers in connection with active investigations of potential wrongdoing." *NACDL*, 844 F.3d at 254 (quoting *In re Sealed Case*, 146 F.3d at 885).

The parties direct the court to a pair of cases from the federal district court in the District of Columbia. They argue that the cases illustrate the proper analysis for deciding whether material is created in anticipation of litigation in the first scenario—*i.e.*, when a government attorney acts as a legal advisor. First, in *Stein v. United States Department of Justice*, 134 F. Supp. 3d 457 (D.D.C. 2015), plaintiff sued DOJ on six FOIA claims. *Id.* at 463. Plaintiff brought one claim against the Civil Division of the United States Department of Justice. *Id.* Plaintiff sought copies of three monographs from the Civil Division. *Id.* at 475. The monographs were titled "Chevron Notes," "The Governmental Privileges," and "Defending

Actions Brought Pursuant to the Privacy Act of 1974." *Id.* The Civil Division withheld the monographs under Exemption 5 because, it asserted, the monographs "were created for the specific purpose of providing legal guidance to federal attorneys and were not intended for public disclosure." *Id.* (citation omitted).

The district court agreed with DOJ. It concluded the monographs were prepared in anticipation of litigation because they outlined the legal strategies of attorneys who would litigate on the government's behalf. *Id.* at 479. The three monographs, the court explained, were "'veritable "how to" manuals for building defenses and litigating' challenges to agency actions, assertions of governmental privileges and Privacy Act litigation—precisely the kind of documents that 'provid[e] advice to agencies or attorneys about how to conduct legal proceedings or specific anticipated claims[.]'" *Id.* at 480 (quoting *Shapiro*, 969 F. Supp. 2d at 36–37).

Second, in *Shapiro v. United States Department of Justice*, 969 F. Supp. 2d 18 (D.D.C. 2013), plaintiff filed a FOIA request with the Executive Office for United States Attorneys seeking "a copy of all records in the Freedom of Information and Privacy Brief Bank . . . ." *Id.* at 24. The Brief Bank consisted of two broad categories of records: (1) court documents, *i.e.*, selected filings from FOIA lawsuits and basic author and case information; and (2) summary documents, which provided brief summaries of the issues involved in a given case and the author's view of the key issues in a case. *Id.* at 35. DOJ withheld the materials under Exemption 5, claiming attorney work product. *Id.* at 25. DOJ's declarations provided that the Brief Bank was "maintained on the [DOJ]'s intranet" and was "only available to and accessible by [DOJ] personnel." *Id.* at 24. And, DOJ asserted, the Brief Bank "was created and maintained

by an attorney on the EOUSA's FOIA and Privacy Act Staff," and that the Brief Bank was "a tool for use in anticipated FOIA litigation." *Id.*

After concluding the Brief Bank did not deserve work product protection as a whole, the court considered whether a particular part of the Brief Bank—the case summaries—deserved work product protection. Based on DOJ's description of the documents as mere summaries or briefs of cases and key issues, the court concluded that the case summaries revealed no legal strategy or other case-specific legal considerations that might implicate future litigation. *Id.* at 37. As the court reasoned, the documents were not "veritable 'how to' manuals" because they provided no advice to agencies or attorneys about how to conduct legal proceedings on specific anticipated claims against federal agencies; instead, the summaries, in effect, provided "neutral objective analyses" underserving of work product protection. *Id.*

Adopting the approach used in these two cases, the court finds that several items more closely resemble the monographs in *Stein* than the neutral case summaries in *Shapiro*. For example, Item 90 is a "Monograph drafted by DOJ Civil Division Torts Branch addressing the potential legal liability arising from the involvement of the United States in aeronautical mapping and charting." Doc. 20-3 at 6 (*Vaughn* index # 90). DocuFreedom contends that, although identified as a monograph, the *Vaughn* index does not explain whether Item 90 contains mere case summaries or actual strategic advice from agency attorneys. But DOJ argues the *Vaughn* index makes it clear that the monograph addresses "potential legal liability" for action by the United States and its agencies—here, aeronautical mapping and charting.

Item 90 is covered by the work product privilege, and thus is exempt from disclosure. DOJ attorneys were acting as "legal advisor[s]" to protect their client—the United States—"from the possibility of future litigation." *Stein*, 134 F. Supp. 3d at 478 (quoting *In re Sealed Case*, 146

F.3d at 885).  Specifically, Item 90 addresses legal challenges—*i.e.*, "addressing potential legal liability"—for a government program—*i.e.*, the government's involvement in aeronautical mapping and charting.  Thus, unlike a neutral summary, Item 90 offers more "pointed advice" on "the types of legal challenges likely to be mounted against a proposed program."  *Am. Immigration Counsel*, 905 F. Supp. 2d at 221–22 (quoting *Delaney, Migdail & Young, Chartered v. IRS*, 826 F.2d 124, 127 (D.C. Cir. 1987)).

Other withheld items resemble Item 90, and so the work product privilege applies to them as well.  They are "veritable 'how to' manuals for building defenses and litigating" challenges under the Federal Tort Claims Act (Items 2–3, 5, 7, 8, 9, 11–13).  *Stein*, 134 F. Supp. 3d at 480.  For example, Item 11 is a monograph covering FTCA suits arising in foreign countries.  It "[discusses] how and when such claims arise, when and how the FTCA applies, [discusses] relevant statutes and case law, and [provides] litigation guidance for DOJ attorneys involved in such cases."  Doc. 20-3 at 4 (*Vaughn* index # 11).  The remaining documents listed above follow a similar pattern.  *See, e.g.*, Item 2 ("Assault and battery exception"); Item 5 ("Defending the individual capacity claim").  These items fall within the scope of work product protection because they present guidance about "recurring, parallel factual settings and identical legal and policy considerations."  *Stein*, 134 F. Supp. 3d at 479 (quoting *FTC v. Grolier Inc.*, 462 U.S. 19, 30 (1983) (Brennan, J., concurring in part and concurring in the judgment)).  In short, disclosing these documents would benefit parties bringing claims against the United States under the FTCA because it would provide the opposing party with "the benefits of the agency's legal and factual research and reasoning, enabling [them] to litigate on wits borrowed from" DOJ.  *Id.* (quoting

*Grolier*, 462 U.S. at 30).[7]  DOJ properly withheld Items 2–3, 5, 7–9, 11–13, and 90 under Exemption 5.

> **3.  DOJ must produce Items 4, 6, and 37 for in camera review because the court cannot determine with reasonable certainty from the *Vaughn* index that Exemption 5 applies.**

DOJ has the burden to establish that it properly invoked Exemption 5 for each disputed item.  *Hull*, 656 F.3d at 1177.  And if the court cannot conclude with "reasonable certainty" that the agency properly exempted an item, the court may order DOJ to submit the contested item for *in camera* review.  *Schmidt*, 320 F. Supp. 3d at 1238 (citing *Hull*, 656 F.3d at 1178); *DeSalvo v. IRS*, 861 F.2d 1217, 1222 n.6 (10th Cir. 1988) ("FOIA allows the district court flexibility in utilizing in camera review of the disputed documents, indexing, oral testimony, detailed affidavits, or alternative procedures to determine whether a sufficient factual basis exists for evaluating the correctness of the [agency] determination in each case.").  The court directs DOJ to submit Items 4, 6, and 37 for in camera review because the court cannot conclude with reasonable certainty that Exemption 5 applies to these items in full.

Item 4 is a 470-page compilation that includes briefing papers, practice guides, and commentaries about a variety of constitutional litigation issues.  DocuFreedom asserts that Item 4 is not work product because the *Vaughn* index does not describe it as a monograph or training material.  But, this characterization isn't entirely accurate.  The *Vaughn* index characterizes the collection as "briefing papers, commentaries, sample filings, and *monographs* . . . prepared by Civil Division attorneys to assist other Civil Division attorneys in litigating Constitutional and specialized tort cases."  Doc. 20-3 at 2 (*Vaughn* index # 4) (emphasis added).

---

[7]  In its Response, DocuFreedom has conceded that Items 7, 8, and 9 fall within Exemption 5.  Doc. 22 at 7–8.  When a requester expressly disclaims an interest in a category of information, the agency need not disclose the information because it is outside the scope of the request.  *Integrity Comm.*, 501 F.3d at 1233 n.6.

Although Item 4 contains monographs, the *Vaughn* index doesn't permit the court to discern with reasonable certainty from the *Vaughn* index whether the monographs—and other materials—were prepared in anticipation of litigation. In *Stein*, the government identified the monographs by name and divulged their specific focus and application. *Stein*, 134 F. Supp. 3d at 475–76. This permitted the district court to conclude, for example, that "Defending Actions Brought Pursuant to the Privacy Act of 1974" operated as a "veritable 'how to' manual" in Privacy Act lawsuits. *See Stein*, 134 F. Supp. 3d at 479–80. In contrast, DOJ broadly asserts that Civil Division attorneys use the monographs—as well as the briefings papers, commentaries, and sample filings—to litigate constitutional and specialized tort cases. The court concludes this generalized assertion of privilege for all the documents in Item 4—the number of documents is unknown to the court—won't suffice. *Coastal States*, 617 F.2d at 865 ("[I]f an agency were entitled to withhold any document prepared by any person in the Government with a law degree simply because litigation might someday occur, the policies of FOIA would be largely defeated.").

Item 6 is a "Monograph prepared by the director of the Torts Branch and Torts Branch staff attorneys regarding the discretionary function exception to the Federal Torts Claims Act (28 U.S.C. §§ 2671-2680); includes summaries and analysis of key cases involving the discretionary function exception." Doc. 20-3 at 3 (*Vaughn* index # 6). DocuFreedom asserts that Item 6 consists of "neutral summaries" like the Brief Bank case summaries at issue in *Shapiro*. In response, DOJ asserts that the inclusion of the phrase "*and analysis*" distinguishes Item 6 from the Brief Book in *Shapiro*.

The phrase "and analysis" says too little. For one, the court can't discern whether the analysis is neutral and objective, in which case Item 6 would operate "like an agency manual,

fleshing out the meaning of the law, and thus . . . not prepared in anticipation of litigation." *Am. Immigration Counsel*, 905 F. Supp. 2d at 222 (quoting *Delaney*, 826 F.2d at 127). Nor does "and analysis" inform the court whether Item 6 offers more "pointed advice" warranting work product protection. *Id.* In short, the court is left to speculate whether "and analysis" simply refers to DOJ lawyers identifying key issues, as it did in *Shapiro*.

Last, Item 37 is a 191-page document consisting of two parts: (1) summaries and commentary on foreign terrorist organization (FTO) decisions in state and federal court, and (2) a prosecutor's guide to FTOs. The *Vaughn* index describes the function of Item 37 as "assisting government prosecutors and other interested individuals in keeping up-to-date with developments in FTO-related case law." Doc. 20-3 at 5 (*Vaughn* index # 37). Such a description suggests the summaries do not reveal any "legal strategy or case-specific legal considerations that might have implications for future litigation if revealed to adversaries." *Shapiro*, 969 F. Supp. 2d at 37; *Stein*, 134 F. Supp. 3d at 480 ("The monographs here are much more than neutral summaries."); *see also ACLU of N. Cal. v. U.S. Dep't of Justice*, 880 F.3d 473, 488 (9th Cir. 2018) ("[S]ections provid[ing] objective descriptions of cases . . . more closely resemble continuing legal education resources for DOJ attorneys than attorney work product."). In contrast, the prosecutor's guide to FTOs may—in part or in full—warrant work product protection. *NACDL*, 844 F.3d at 251–52 (concluding training manual was attorney work product based on extensive government declarations and *in camera* review).

DOJ requests that the court—should it conclude that it lacks sufficient grounds to apply Exemption 5—permit DOJ to submit the items for *in camera* review and allow DOJ to provide supplemental support. The court agrees. The court directs DOJ to submit Items 4, 6, and 37 for *in camera* review. And, if DOJ intends to stand on its position that Exemption 5 shields Items 4,

6, and 37, DOJ must file a renewed *Vaughn* index and may submit supplemental declarations.

DOJ must confine its supplementation to the issues discussed in this Order. *Schmidt*, 320 F.

Supp. 3d at 1245. DOJ must submit this supplemental material within 30 days of the court

entering this Order. Once DOJ submits its supplemental material, DocuFreedom has 30 days to

file a response. The court will not allow a reply.

> **4. DOJ also must produce Items 39, 49, and 50 for *in camera* review because, although Exemption 5 may apply to internal training materials, the court must address segregability.**

The remaining items can best be described as internal training materials. The court

identifies them briefly, below:

- Item 39 is listed as a Trial Advocacy Course from the Attorney General's Advocacy Institute—it is described as a training manual for basic training in trial advocacy for DOJ lawyers and includes "procedures, practice tips, and litigation-strategy guidance for DOJ litigators, particularly prosecutors."

- Item 49 is a working group manual on federal criminal discovery practices, which covers "DOJ policy, positions and guidance for federal prosecutors to use as a resource to assess and fulfill timely discovery obligations."

- Item 50 is a training manual for a criminal advocacy course at DOJ's internal training facility. Item 50 addresses "strategies and techniques for criminal prosecution, including pretrial matters, jury selection considerations, opening and closing statements, direct and cross examination techniques, expert witness considerations, and sentencing."

Doc. 20-3 at 5 (*Vaughn* index # 39, 49, 50). DocuFreedom asserts that Items 49 and 50 are not

exempt because "'materials serving no cognizable adversarial function, such as policy manuals'

are not work product." Doc. 22-8 (quoting *NACDL*, 844 F.3d at 255).

Although DocuFreedom cites *NACDL* to support its argument, that case actually

undercuts DocuFreedom's argument. In *NACDL*, the D.C. Circuit considered whether the

Federal Criminal Discovery Blue Book—an internal DOJ publication—fell within the attorney

work product privilege. *NACDL*, 844 F.3d at 249. DOJ had created the Blue Book to guide

federal prosecutors in their discovery practice in criminal prosecution. Specifically, the Blue Book contained "information and advice for prosecutors about conducting discovery in their cases, including guidance about the government's various obligations to provide discovery to defendants." *Id.*

The D.C. Circuit concluded that the Blue Book was exempt from disclosure under FOIA's Exemption 5. *Id.* at 250. Because the Blue Book was designed to advise DOJ prosecutors on their discovery disclosure obligations and serve as a litigation manual, it was "'created in anticipation of reasonably foreseeable litigation,' namely, federal criminal prosecutions." *Id.* at 251.[8]

Turning to the items at issue here, the court concludes that under *NACDL* the attorney work product privilege likely applies to Items 39, 49, and 50. First, Item 49 is analogous to the Blue Book at issue in *NACDL*—*i.e.*, it is a group manual focused on providing guidance to federal prosecutors to fulfill their criminal discovery obligations. Second, Items 39 and 50 cover trial advocacy training. In *NACDL*, plaintiff argued that the attorney work product privilege did not apply to the Blue Book because it served a non-adversarial function—*i.e.* education and training of prosecutors. *Id.* at 255. The D.C. Circuit explained that the work product privilege turns on the document's function. *Id.* (citing *Delaney*, 826 F.2d at 127). If the document serves

---

[8]     *NACDL* represents "the outer reaches of Exemption 5's reformulation of the work product privilege." *ACLU of San Diego & Imperial Ctys. v. U.S. Dep't of Homeland Sec.*, No. 8:15-CV-00229-JLS-RNB, 2017 WL 9500949, at *9 (C.D. Cal. Nov. 6, 2017). In a concurring opinion in *NACDL*, two judges felt compelled by precedent to affirm the government's use of Exemption 5 but expressed pointed concern about the creep of Exemption 5's scope. *NACDL*, 844 F.3d at 258–60 (Sentelle, J., joined by Edwards, J., concurring) ("In short, I join the judgment of the majority, not because I want to, but because I have to."). Judge Sentelle found it unlikely that "if an insurance defense attorney had written a secret treatise . . . on how to defend . . . defective product cases," the court would find the treatise protected as work product if it was "not prepared for a particular client or particular case, but only to educate attorneys of a particular sort in the litigation of a particular kind of case[.]" *Id.* at 259. The concurring opinion raises important questions about the scope of Exemption 5. And, although not binding on this court, the court finds the D.C. Circuit's decision in FOIA cases highly persuasive. The court thus applies *NACDL*'s majority reasoning to this case.

no cognizable adversarial function, it generally does not qualify as work product. *Id.* (citation

omitted). But, the D.C. Circuit concluded that the Blue Book served an adversarial function—

and thus deserved work product protection—because "it addresse[d] how attorneys on one side

of an adversarial dispute—federal prosecutors—should conduct litigation." *Id.* For example, the

Blue Book described how to respond to the other side's arguments, provided cases to cite, and

explained what material to turn over. *Id.*

Both Items 39 and 50 serve a similar adversarial purpose. Item 39 is a training manual on

trial advocacy. The *Vaughn* index explains that it includes "procedures, practice tips, and

litigation-strategy guidance for DOJ litigators, particularly prosecutors." Doc. 20-3 at 5 (*Vaughn*

index # 39). And, similarly, Item 50 covers criminal advocacy training. In more detail than Item

39, it explains how it serves an adversarial function—namely, it addresses strategies and

techniques for different stages of a criminal prosecution including pretrial matters, jury selection,

opening and closing statements, direct and cross examinations, and sentencing. *Id.* (*Vaughn*

index # 50). Thus, like the Blue Book, Items 39 and 50 serve as training materials for

prosecutors, but they also serve an adversarial function.[9]

But, the court reserves its summary judgment ruling based on the current record. The

court directs DOJ to provide Items 39, 49, and 50, so the court can conduct an *in camera* review

of these items. "In cases involving voluminous or lengthy work-product records . . . it [is]

generally preferable for courts to make at least a preliminary assessment of the feasibility of

segregating nonexempt material." *NACDL*, 844 F.3d at 256–57. Material is more likely to be

reasonably segregable in long documents with 'logically divisible sections.'" *Id.* (quoting *Mead*

---

[9]       DocuFreedom also contests Item 39 because the *Vaughn* index does not indicate that DOJ attorneys
provided any input into its creation. This argument fails to consider Mr. Allen's declaration, however. He states
that all the items currently at issue—including Item 39—were "prepared by DOJ attorneys." Doc. 20-2 at 5 (Allen
Decl. ¶ 21).

*Data*, 566 F.2d 242, 261 n.54 (D.C. Cir. 1977)).  In this case, Item 49 is 479 pages; Item 50, 634

pages.  Item 39 is only 30 pages, but the court also will review it to determine whether any

portion is segregable.  As discussed for Items 4, 6, and 37, DOJ may submit supplemental

affidavits and a renewed *Vaughn* index to support its decision to apply Exemption 5.

     **5.   DOJ may redact names and contact information of DOJ employees**
           **before producing Item 10.**

     Last, the court considers Item 10, which is titled "Expertise in the Civil Division."  The

*Vaughn* index describes Item 10 as:  "DOJ intranet page identifying 500 different legal issues

and statutes, along with Civil Division attorneys with expertise and experience in those areas;

intended to facilitate discussion among DOJ attorneys and serve as a reference to DOJ

attorneys."  Doc. 20-3 at 4 (*Vaughn* index # 10).

     DOJ invokes Exemptions 5 and 6 to prevent disclosure of Item 10.  DocuFreedom

advances no argument for disclosing Item 10.  But, the court proceeds with its analysis because

"the burden is on the agency to show that nondisclosed requested material falls within a stated

exemption."  *Stein*, 134 F. Supp. 3d at 468 (citations omitted).  Here, the court concludes that

Item 10 is not covered by Exemption 5 because it was not prepared in anticipation of litigation.

Instead, the *Vaughn* index suggests that Item 10 is nothing more than a reference directory of

DOJ attorneys.  At most, Item 10 merely serves as a tool to identify issues—and associated DOJ

attorneys—who provide legal guidance on specified topics.

     In the alternative, DOJ asks the court to permit it to redact names and contact information

of DOJ employees before any production under Exemption 6.  The court grants DOJ's request.

"Exemption 6 of FOIA excuses disclosure of 'personnel and medical files and similar files the

disclosure of which would constitute a clearly unwarranted invasion of personal privacy.'"

*Integrity Comm.*, 501 F.3d at 1232 (quoting 5 U.S.C. § 552(b)(6)).  "Similar files" extends

broadly to "detailed Government records on an individual which can be identified as applying to that individual." *Id.* (quoting *U.S. Dep't of State v. Washington Post Co.*, 456 U.S. 595, 602 (1982)) (further citations omitted). DOJ may redact information under Exemption 6 and then disclose Item 10 to DocuFreedom when it submits its supplemental materials to the court. If, after review, DocuFreedom does not explicitly disclaim a challenge to these redactions, the court will address the propriety of DOJ's redactions when it addresses the remaining disputed items.

## B. Ms. McFadden's Emails

DocuFreedom also has requested any emails to and from Ms. McFadden about DocuFreedom's FOIA request. DOJ provided DocuFreedom with 169 pages of emails and made 46 redactions to those emails. DOJ asserts the redactions were proper under FOIA Exemptions 5 and 6. The court considers the parties' arguments about the redactions, below.[10]

### 1. The deliberative process privilege.

DOJ contends that it redacted several emails because they include internal discussion and deliberations about DocuFreedom's FOIA requests. The "deliberative process privilege" exempts documents "that reflect how decisions are made." *Stewart v. U.S. Dep't of Interior*, 554 F.3d 1236, 1239 (10th Cir. 2009). This privilege shields "documents reflecting advisory opinions, recommendations and deliberations comprising part of a process by which governmental decisions and policies are formulated." *Integrity Comm.*, 501 F.3d at 1226 (quoting *Klamath Water*, 532 U.S. at 8). Because "officials will not communicate candidly among themselves if each remark is a potential item of discovery," this privilege helps "enhance

---

[10] DocuFreedom expressly has disclaimed challenges to several redactions. First, DocuFreedom does not challenge Redactions 24–46. *See* Doc. 22 at 14 n.5. Second, DocuFreedom does not challenge Redactions 10 and 11 because they reference an employee taking leave. Doc. 22 at 13 n.4. Also, the *Vaughn* index includes several duplicate redactions—a result of DOJ producing iterations of email chains. Thus, Redactions 4, 6–8, 18, and 21 are not challenged.

the quality of agency decisions by protecting open and frank discussion among those who make them within the Government." *Klamath*, 532 U.S. at 8–9.

To invoke this privilege, DOJ must establish that the redacted material is (1) predecisional and (2) deliberative. *Integrity Comm.*, 501 F.3d at 1227. Material is predecisional if "prepared in order to assist an agency decisionmaker in arriving at his decision." *Id.* (quoting *Renegotiation Bd. v. Grumman Aircraft Eng'g Corp.*, 421 U.S. 168, 184 (1975)). But, postdecisional material, which "set[s] forth the reasons for agency decision[s] already made," is not protected. *Id.* (quoting *Renegotiation Bd.*, 421 U.S. at 184).

Whether material is deliberative is "more difficult to cabin." *Integrity Comm.*, 501 F.3d at 1227 ("The cases in this area are of limited help to us, because the deliberative process is so dependent upon the individual document and the role it plays in the administrative process." (quoting *Coastal States*, 617 F.2d at 867)). Generally, the deliberative process privilege does not protect "memoranda consisting only of compiled factual material or purely factual material contained in deliberative memoranda and severable from its context." *Id.* (quoting *EPA v. Mink*, 410 U.S. 73, 87–88 (1973), *superseded by statute on other grounds*, Pub. L. No. 93–502, 88 Stat. 1561 (1974)). Non-factual materials that express opinions or recommendations, however, plainly are protected. *Id.* (citing *Sears, Roebuck & Co.*, 421 U.S. at 150). In the context of this case, "[e]mail discussions between agency officials about how to answer a FOIA request are deliberative." *Schmidt*, 320 F. Supp. 3d at 1245 (citing *Competitive Enter. Inst. v. EPA*, 232 F. Supp. 3d 172, 187 (D.D.C. 2017)).

### a. DocuFreedom's constructive denial argument is unavailing.

DocuFreedom first argues that any email sent more than 30 business days after its FOIA requests are not predecisional because DOJ already had constructively denied DocuFreedom's

requests. In short, DocuFreedom contends, DOJ decided not to release the records by issuing no response within the statutory time limit.

DocuFreedom cites no case law for this proposition, nor does the court find any. DocuFreedom's argument is not persuasive. In FOIA cases, constructive exhaustion permits a requester to seek judicial review without an administrative appeal. For example, in *Barvick v. Cisneros*, 941 F. Supp. 1015 (D. Kan. 1996), plaintiff argued that he was entitled to summary judgment because the government agency did not respond to his FOIA request within the statutory time limit. *Id.* at 1019. The court rejected plaintiff's argument, explaining that the government's timeline to respond was to "allow a FOIA requester, who has not yet received a response from the agency, to seek a court order compelling the release of the requested documents." *Id.* (quoting *Oglesby v. U.S. Dep't of Army*, 920 F.2d 57, 64 (D.C. Cir. 1990)). The government's failure to respond within the timeline set by FOIA thus enables a requester to seek review by the courts; but, it does not go so far as to operate as a waiver of the deliberative process privilege.

### b. Redactions 1–3, 5, 9, 16, 17, 19, 22–23 are exempt under the deliberative process privilege.

After reviewing the *Vaughn* index, DOJ's declarations, and the parties' arguments, the court concludes that the deliberative process privilege applies to the challenged redactions. Redactions 1–3, 5, 9, 16, 17, 19, 22–23 involve discussions between JMD employees about responding to DocuFreedom's FOIA request.[11] For example, Redactions 2 and 3 include draft responses between JMD employees of a letter to accompany DOJ's response to DocuFreedom.

---

[11] DocuFreedom does not expressly challenge each listed redaction. But, the onus is on the agency to justify exemption. The court thus lists any redaction not expressly disclaimed by DocuFreedom. The only redaction that does not fall under the deliberative process privilege is Redaction 20. The court finds the redaction proper under Exemption 6 because, as the *Vaughn* index explains, it references an employee's personal health. And DocuFreedom raises no argument to support disclosure.

*See Schmidt*, 320 F. Supp. 3d at 1245 (concluding deliberative process privilege applies to protect deliberations about how to answer FOIA questions). And, Redactions 12–15 involve a legal discussion between OIP attorneys and Ms. Tang about how to respond to DocuFreedom's FOIA request—*e.g.*, what exemptions might apply. These discussions fall squarely under the deliberative process privilege—namely, the discussions would demonstrate the "give-and-take of the consultative process" in fashioning responses to FOIA requests. *Coastal States*, 617 F.2d at 866.

DocuFreedom asserts that DOJ has redacted the "grumblings" and "complaints" about responding to the FOIA request. This argument is speculative. Nothing in the unredacted portions of the emails suggests such a conclusion. And, where DocuFreedom "has not produced contradictory evidence or even evidence that defendant has used this justification in bad faith," the use of the deliberative process privilege by DOJ is proper. *Schmidt*, 320 F. Supp. 3d at 1245. In this case, the *Vaughn* index satisfies the court that DOJ's decision to invoke Exemption 5 is plausible. *Stein*, 134 F. Supp. 3d at 468–69. Thus, DOJ has invoked the deliberative process privilege properly for Redactions 1–3, 5, 9, 16, 17, 19, 22–23.

## IV.     Conclusion

For reasons explained above, the court grants DOJ's Motion for Summary Judgment (Doc. 19) in part and denies it in part. The court concludes that DOJ has fulfilled its duties under FOIA for Items 2–3, 5, 7–9, 11–13, and 90 and the redactions to Ms. McFadden's emails. But, the court concludes it lacks sufficient information to decide if DOJ properly exempted Items 4, 6, 10, 37, 39, and 49–50. The court thus denies summary judgment—without prejudice—for DOJ on these items. The court thus orders DOJ to produce Items 4, 6, 10, 37, 39, and 49–50, for *in camera* review within 30 days of this Order's entry. DOJ also may file supplemental affidavits

and a renewed *Vaughn* index to support its exemptions within the 30-day time limit. DOJ must confine any supplementation it chooses to provide to the issues discussed in this Order. Once DOJ submits its supplemental material, DocuFreedom has 30 days to file a response. The court will not allow a reply.

**IT IS THEREFORE ORDERED BY THE COURT THAT** defendant United States Department of Justice's Motion for Summary Judgment (Doc. 19) is granted in part and denied in part.

**IT IS FURTHER ORDERED THAT** defendant must produce to the court Items 4, 6, 10, 37, 39, and 49–50, for *in camera* review within 30 days of this Order's entry. The court will rule on the applicability of the exemptions at a later day.

**IT IS FURTHER ORDERED THAT** defendant must file supplemental affidavits and a renewed *Vaughn* index to support its exemptions within the 30-day time limit. DOJ must confine any supplementation it chooses to provide to the issues discussed in this Order. Once DOJ submits its supplemental material, DocuFreedom has 30 days to file a response. The court will not allow a reply.

**IT IS FURTHER ORDERED THAT** defendant Karen McFadden is dismissed from this case.

**IT IS SO ORDERED.**

**Dated this 16th day of August, 2019, at Kansas City, Kansas.**

**s/ Daniel D. Crabtree**
**Daniel D. Crabtree**
**United States District Judge**